J. S02010/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JAMES GEORGE DOURIS, | : | No. 998 EDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, February 29, 2016,
in the Court of Common Pleas of Bucks County
Criminal Division at No. CP-09-CR-0007834-2014

BEFORE:  FORD ELLIOTT, P.J.E., STABILE AND MOULTON, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 19, 2017**

James George Douris appeals from the February 29, 2016 judgment of sentence entered in the Court of Common Pleas of Bucks County, following his conviction in a jury trial of one count of perjury, three counts of forgery, one count of tampering with or fabricating physical evidence, and one count of false swearing in an official proceeding.[1]  The trial court imposed an aggregate sentence of 30 days to 23 months of imprisonment, followed by 3 years of probation.  We affirm.

The trial court summarized the evidence, as follows:

> [Appellant] appeared before Magisterial District
> Judge Jan Vislosky in Fallsington, Bucks County, PA
> on November 17, 2011.  [Appellant] had filed a civil
> complaint against Becker Tree Service ("Becker"),

---

[1] 18 Pa.C.S.A. §§ 4902(a), 4101(a)(3), 4910(2), and 4903(a)(1), respectively.

which had performed work at his home in Upper Makefield Township, Bucks County. [Appellant] claimed that the work performed by Becker was unsatisfactory, [sic] and required repair. [Appellant] sought damages for repayment of his original costs, as well as for the cost of repairing Becker's work, in the total amount of Five Thousand Dollars ($5,000.00).

. . . .

On the first day of trial, Magisterial District Judge Vislosky recounted [appellant's] sworn[Footnote 3] testimony in her district court on November 17, 2011, when he asserted that he had paid Becker Two Thousand Dollars ($2,000.00) which he was seeking to have refunded, given Becker's allegedly inadequate tree work on his property. [Appellant] also claimed at trial that the $2,000.00 was owed to him under the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

[Footnote 3] The oath to tell the truth taken by [Appellant] was administered by legal authority, Judge Vislosky, in the judicial proceeding which took place in her court.

Judge Vislosky also recalled that [appellant] testified that he sought an additional Three Thousand Dollars ($3,000.00), which constituted repayment to him of what he alleged he had already paid others to repair damages allegedly caused by Becker, along with additional damages. [Appellant's] testimony in the subject Common Pleas Court trial, as to why he sought the additional $3,000.00 in damages, was essentially consistent with Judge Vislosky's testimony as to the claims he had made in her court.

In support of his testimony in her court, [appellant] provided Judge Vislosky with an invoice reflecting the $2,000.00 paid to Becker. He also provided invoices that he represented to be

estimates and/or payments for repair of damages allegedly caused by Becker as a result of services it performed at [appellant's] property. [Appellant] submitted photographs of the damage to his property that he alleged had been caused by Becker.

Judge Vislosky testified that at the hearing before her, [appellant] testified that a representative from Becker came to his home and offered to repair any damages or to arrange for another company to perform any repairs. When a representative from Maple's Tree Service thereafter came to [appellant's] home to complete the repairs, [appellant] would not allow him to do so. [Appellant] testified that his son-in-law, Joe Connolly, "came over--right away."

The invoices [appellant] presented to Judge Vislosky for the repair work were from "Joe Connolly in Philadelphia." Exhibit C-2 was a proposal for work in the amount of Two Thousand Five Hundred Dollars ($2,500.00) for raking wood chips, filling in topsoil and seeding and fertilizing the grass following Becker's allegedly substandard work at the property. That invoice reflected a deposit to be paid of One Thousand Two Hundred Fifty Dollars ($1,250.00) if the proposal were accepted. The Connolly invoice did not include an address or telephone number.

Judge Vislosky testified that [appellant] provided her with another invoice from "Joe Connolly of Philadelphia" for grinding six (6) tree stumps. Again, no business address or telephone number was reflected on the proposal. The proposal stated a cost of One Thousand Two Hundred Fifty Dollars ($1,250.00), with a deposit of Six Hundred Twenty-Five Dollars ($625.00) due should the proposal be accepted.

Exhibit C-4 was a proposal from "Joe Connolly of Philadelphia" to [appellant] for repairing and resealing [appellant's] driveway. The Exhibit included three (3) pages. On the first page the proposal reflected a total cost of $1,250.00. Page two (2) reflected a Six Hundred Twenty-Five Dollar

($625.00) deposit having been paid, and page three (3) reflected a payment of the remaining $625.00. The proposal did not include any contact information for Joe Connolly of Philadelphia. Additionally, the documents included in Exhibits C-2, C-3, and C-4 were all devoid of any reference to dates, including dates of proposals, work performed or completed, or payments billed or received.

Judge Vislosky testified that [appellant] provided sworn testimony on November 17, 2011 that Joe Connolly had come to [appellant's] home, assessed the damage done by Becker, and provided proposals for repair of the damage. [Appellant] testified he paid some of the money to Connolly but that he needed to prevail at the hearing before Judge Vislosky to garner the funds to pay Connolly what he still owed him.[Footnote 4]

[Footnote 4] We note that after hearing all of the testimony and reviewing the exhibits, Judge Vislosky ruled in favor of Becker and against [appellant].

Joseph Connolly, [appellant's] son-in-law, testified at the October, 2015 trial in Common Pleas Court that he has lived in Philadelphia for five (5) years and that he has been employed by Pepsi for approximately seven (7) years. Mr. Connolly testified that he does not work anywhere other than Pepsi and that he is not presently, nor has he been in the past, the owner of his own company. Mr. Connolly testified that over the seven (7) or eight (8) years he has known [appellant], he has performed various work at [appellant's] home. The work performed by Mr. Connolly, either alone or with the assistance of his cousin Robert Supley, included flooring, painting, yard work, soil and tree removal, and driveway paving or sealcoating. Mr. Connolly testified that he could not recall if he removed a tree from [appellant's] property in 2009. He testified, however, that the work at [appellant's] property had been performed prior to 2011; that is, prior to the date when Mr. Supley passed away.

Mr. Connolly testified that he was paid for the work he performed at [appellant's] home, but claimed that he did not know how much he was paid because his wife, [appellant's] daughter, "dealt with it . . . [.] My wife deals with her father. Like, I don't speak with my father-in-law that often. My wife dealt with it." Mr. Connolly testified that his relationship with his father-in-law consisted of seeing him perhaps three (3) or four (4) times per year, for family holidays. They did not otherwise socialize.

[Appellant] testified at the October, 2015 Common Pleas Court trial. He insisted that his son-in-law, Mr. Connolly, with the occasional assistance of Mr. Supley, "absolutely" performed the repair work at issue following Becker's allegedly substandard work at [appellant's] property.

[Appellant] testified that he paid his daughter for Mr. Connolly's work[], but that he did not have a receipt for payment made to Mr. Connolly. When asked how he received the invoice depicted in Exhibit C-2, [appellant] testified he had nothing to do with preparing or altering the invoice. "I didn't make it. I didn't put a pen to it. I didn't do anything to it." ". . . [O]bviously I asked Joe, my son-in-law, to prepare a receipt for me so I can present this to the court. . . . He didn't do it right away." [Appellant] stated that he also asked his son-in-law to produce the document presented as Exhibit C-3. [Appellant] testified that Mr. Connolly did not produce it right away, stating that "it was like pulling teeth." [Appellant] claimed that his son-in-law "absolutely" performed the work described in the invoice introduced as Exhibit C-4, [sic] and insisted that he did not prepare that receipt himself.

When Mr. Connolly was questioned about the Exhibits C-2, C-3, and C-4, he testified that he became aware of the documents labeled "Joseph Connolly of Philadelphia," which [appellant] had presented at his hearing before Magisterial District Judge Vislosky, when members of the Bucks

County District Attorney's office visited him at his job and showed him the proposals. When asked whether he had created those proposals, he replied, "Not that I am aware of," and when pressed for further clarification as to whether he did or did not prepare the proposals, Mr. Connolly again stated "Not that I am aware of." He admitted that "as far as I'm aware of," the first time he saw the documents was when somebody from law enforcement showed them to him. Mr. Connolly testified that he did not know who prepared the invoices represented in Exhibits C-2, C-3, and C-4.

[Appellant] testified at trial that an invoice admitted into evidence as Exhibit C-6 that read "Joe Connelly Jr. Construction," was an invoice that he believed Mr. Connolly had previously presented to him for work performed at [appellant's] home. Despite his testimony that Mr. Connolly is not a "junior," [appellant] insisted that he received the invoice from Mr. Connolly. [Appellant] also noted that the invoice introduced as Exhibit C-6, which spelled Connolly "C-O-N-N-E-L-L-Y", as opposed to "Connolly" as it was spelled in Exhibits C-2, C-3, and C-4, was "spelled wrong . . . misspelled absolutely." Under the circumstances, it was reasonable for the jury to conclude that it was less than likely that Mr. Connolly would mistakenly refer to himself as "Jr.," and less than likely that Mr. Connolly would misspell his own name on written documents [appellant] claimed Mr. Connolly had produced.

Trial court opinion, 8/11/16 at 2, 4-10 (citations to notes of testimony omitted).

The record further reflects that appellant did not file post-sentence motions. On March 24, 2016, appellant filed a notice of appeal to this court. Appellant thereafter complied with the trial court's order directing appellant

- 6 -

to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court then filed its Rule 1925(a) opinion.

Appellant raises the following issues for our review:

A. Was the evidence sufficient to support the convictions?

B. Did the trial judge err in permitting a police detective to testify to the hearsay statement made by the key witness in the case when that witness was never confronted with the statement during testimony?

Appellant's brief at 4.

With respect to appellant's sufficiency challenge, a reading of appellant's brief reveals that he does nothing more than set forth certain portions of Joseph Connolly's trial testimony, as well as certain portions of his own testimony and the testimony of Messrs. Connolly and Supley from the underlying magistrate's hearing, in an effort to convince this court that someone other than appellant prepared the falsified proposals. In so doing, appellant's argument on his first issue challenges the weight of the evidence, not its sufficiency. *See*, *e.g.*, *Commonwealth v. Gibbs*, 981 A.2d 274, 281-282 (Pa.Super. 2008) (an argument that the fact-finder should have credited one witness' testimony over that of another witness goes to the weight of the evidence, not the sufficiency of the evidence); *Commonwealth v. Wilson*, 825 A.2d 710, 713-714 (Pa.Super. 2003) (a review of the sufficiency of the evidence does not include a credibility assessment; such a claim goes to the weight of the evidence);

*Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa.Super. 1997) (the fact-finder makes credibility determinations, and challenges to those determinations go to the weight of the evidence, not the sufficiency of the evidence).

In order to raise a weight claim on appeal, Pennsylvania Rule of Criminal Procedure 607 requires appellant to raise the claim with the trial judge in a motion for a new trial "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Pa.R.Crim.P. 607, comment.

Our review of the certified record reveals that appellant failed to file any post-sentence motions. Additionally, although the certified record contains a portion of the trial transcript, it only includes the transcription of the proceedings that occurred prior to the close of testimony. Furthermore, the sentencing transcript is not contained within the certified record. Therefore, we are unable to determine whether appellant raised a challenge to the weight of the evidence on the record following the jury's verdict or on the record before sentencing. We remind appellant that it is appellant's duty to "ensure that the certified record is complete for purposes of review." *Commonwealth v. Dehart*, 730 A.2d 991, 993 n.1 (Pa.Super. 1999),

***appeal denied***, 745 A.2d 1218 (Pa. 1999). An appellant's failure to provide the reviewing court with a complete certified record results in waiver of the claim. ***See Commonwealth v. Johns***, 812 A.2d 1260, 1261 (Pa.Super. 2002); ***see also, Commonwealth v. Lassen***, 659 A.2d 999, 1008 (Pa.Super. 1995) (holding that where a claim depends upon materials not provided in the certified record, that claim is waived). Accordingly, because the certified record contains no evidence that appellant preserved his weight challenges, appellant waives those challenges on appeal.

Appellant finally complains that the trial court erred in permitting Detective Patricia Haines to testify that during the course of her investigation, Joseph Connolly stated to her that he did not prepare the work proposals[2] that gave rise to appellant's prosecution, that he was unfamiliar with the proposals, that he did not know who prepared the proposals, and that he did not perform the majority of work set forth in the proposals. (Appellant's brief 13-14.) Appellant contends that this portion of the detective's testimony constituted impermissible hearsay because Mr. Connolly was not confronted with the statements that he allegedly made to Detective Haines. Appellant further claims that this portion of Detective Haines's testimony prejudiced appellant because it contradicted Mr. Connolly's trial testimony, and as a result, the jury convicted appellant.

---

[2] We note that appellant refers to the documents in his brief as "invoices," but the record reflects that the each of three documents is titled, "proposal."

> [T]he admissibility of evidence rests within the sound discretion of the trial court, and such a decision will be reversed only upon a showing that the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Hearsay is defined as ["]a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.["] Hearsay testimony is *per se* inadmissible in this Commonwealth, except as provided in the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute.

*Commonwealth v. Gray*, 867 A.2d 560, 569-570 (Pa.Super. 2005) (internal citations, original quotation marks, and original brackets removed).

*See also* Pa.R.E. 803(c) (defining "hearsay" as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").

Here, the record reflects that Mr. Connolly testified as a reluctant prosecution witness. When asked on direct examination when he first saw the proposals, he responded that, "it was the first time you guys came to visit me at my job and showed them to me." (Notes of testimony, 10/20/15 at 40.) When asked on direct if he had created the documents, Mr. Connolly replied, "Not that I'm aware of." (*Id.*) On cross-examination, appellant asked Mr. Connolly if he knew who prepared the proposals that the

- 10 -

prosecutor showed him on direct. Mr. Connolly replied, "No." (*Id.* at 50.) The record demonstrates that this portion of Mr. Connolly's testimony was substantially similar to Detective Haines's testimony. Specifically, when the prosecution asked Detective Haines on direct what Mr. Connolly said about the proposals,[3] the detective responded, "He stated that he did not prepare them, that he was unfamiliar with them, and that he does not know or he did not know who prepared them." (*Id.* at 55.)

With respect to the work that Mr. Connolly performed for appellant, Mr. Connolly testified as follows:

> Q    His housework. Just -- I mean labor, I guess. That's it.
>
> A    In the house or outside the house?
>
> Q    In, outside, around, yes.
>
> Q    What kinds of stuff have you done specifically?
>
> A    Labor I mean. Flooring, paint, yard work. I did -- depends. A lot -- I'm not really sure of everything I've done, but it was a lot of work I did.
>
> Q    Have you ever done any tree removal?
>
> A    Removed a tree from his yard, yes.
>
> . . . .

---

[3] We note that the record reflects that appellant's counsel objected immediately after the prosecutor asked Detective Haines what Mr. Connolly said about the proposals on the grounds that the witness "wasn't contradicted or confronted with any inconsistencies to warrant this testimony." (Notes of testimony, 10/20/15 at 55.)

> Q    Have you ever done any paving work for him?
>
> A    Paving or sealcoating or what?  I don't understand.
>
> . . . .
>
> Q    What exactly did you do?
>
> A    The driveway.
>
> . . . .
>
> A    Put like sealcoating, like I put stuff in the cracks, like on the surface of the driveway.

*Id.* at 37-39.

When the prosecutor asked Detective Haines what Mr. Connolly said about the work that was claimed to have been done as set forth on the proposals,[4] Detective Haines responded, "He stated that he had done some work for [appellant], but that the majority of the things that were listed on the paperwork he did not do." (*Id.* at 56.)  The following colloquy then took place:

> Q    What did he specifically say about the document that contained the claim about stump grinding?
>
> A    He stated that he did not grind any stumps. He stated he did drag some trees and he did do some cleanup work from the refuse of trees, but he did not grind any stumps.

---

[4] We note that the record reflects that appellant's counsel placed an objection on the record immediately after the prosecutor asked Detective Haines what Mr. Connolly said about the work that appellant claimed that Mr. Connolly had done, but counsel did not state the grounds for his objection.  (Notes of testimony, 10/21/15 at 56.)

> Q      What about landscaping?
>
> A      That was when he was explaining that he did drag some trees around and did some raking and that he put -- dug some holes for a fence. And he did some painting.

*Id.* at 56.

The record demonstrates that this portion of Detective Haines's testimony was also substantially similar to Mr. Connolly's testimony. Appellant, however, complains that this constituted inadmissible hearsay because, "for the first time, the jury heard Detective Haines [sic] claim that Mr. Connolly said he had done some work for [appellant], but that the majority of the things that were listed on the paperwork he did not do." (Appellant's brief at 15.)   Detective Haines's statement that Mr. Connolly said "that the majority of the things that were listed on the paperwork he did not do," however, was not offered to prove the truth of the services that Mr. Connolly rendered to appellant, but was offered to demonstrate that Mr. Connolly did not prepare the invoices.  Therefore, the trial court did not abuse its discretion in admitting the statement because it did not constitute hearsay under Pa.R.E. 803(c).

Judgment of sentence affirmed.


Stabile, J. joins this Memorandum.

Moulton, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/2017